FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 17 2025

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BOYCE MITCHELL**                                                                 **PLAINTIFF**

v.                                Case No. 4:25-CV- **604-JM**

**HEALTH CARE SERVICE CORPORATION**                                **DEFENDANT**

## ORIGINAL COMPLAINT

COMES NOW Boyce Mitchell, by and through his attorneys Elizabeth Rogers and Chris Burks of PUNCHWORK LAW, for his Original Complaint against Health Care Service Corporation, he does hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1. Plaintiff brings this action against the Defendant for violation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000(e)2 ("Title VII") and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, et seq. ("ACRA") for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendant's discriminatory actions toward Plaintiff, resulting in his termination.

2. Plaintiff received inequitable treatment and an adverse employment action as a result of his race, which is multiracial (Creole/Crete); his color, which is Black; his sex, which is male; and in retaliation for his complaints about this treatment.

3. Upon information and belief, Defendant has willfully and intentionally committed violations of Title VII and ACRA, as described, *infra*.

### II. JURISDICTION AND VENUE

4. The United States District Court for the Eastern District of Arkansas has subject

This case assigned to District Judge __Moody__
and to Magistrate Judge __Ervin__

matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the Title VII.

5.  Plaintiff's claims under ACRA form part of the same case or controversy and arise out of the same facts as Title VII claims alleged in this Complaint.

6.  Therefore, this Court has supplemental jurisdiction over Plaintiff's ACRA claims pursuant to 28 U.S.C. § 1367(a).

7.  The acts complained of herein were committed and had their principal effect within the Central Division of the Eastern District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

8.  Defendant does business in this District and a substantial part of the events alleged herein occurred in this District.

9.  The witnesses to Title VII and ACRA violations alleged in this Complaint reside in this District.

### III. THE PARTIES

10. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

11. Plaintiff is a resident and citizen of Pulaski County, Arkansas.

12. Plaintiff Boyce Mitchell was hired by Defendant on October 10, 2022, as a Senior Product Delivery Consultant. He worked for Defendant continuously until his termination on July 2, 2024.

13. At all material times, Plaintiff has been entitled to the rights, protection, and benefits provided under Title VII and ACRA.

14. Defendant Health Care Service Corporation is an insurance company headquartered in Illinois.

15. Defendant Health Care Service Corporation can be served through its agent for service in Arkansas, Corporation Service Company.

16. Defendant Health Care Service Corporation is an "employer" within the meanings set forth in Title VII and ACRA, and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

## IV.  FACTUAL ALLEGATIONS

17. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

18. Plaintiff Boyce Mitchell was hired by Defendant on October 10, 2022, as a Senior Product Delivery Consultant, which involved strategizing the implementation of new product or product enhancements related to Defendant's health benefits company, which operates through Blue Cross Blue Shield divisions in various states. Plaintiff worked for Defendant continuously until his termination on July 2, 2024.

19. Plaintiff is a Black male of multiracial (Creole/Crete) heritage. Plaintiff publicly identified and presented as a Creole/Crete male during his employment with Defendant.

20. During his employment, Plaintiff was discriminated against based on his race, sex, and color, which resulted in adverse employment actions, including his termination. Plaintiff made complaints about this treatment to his management and to Defendant's Human Resources Department, and he was retaliated against a result of this protected activity.

21.     On Plaintiff's first day of employment, he was sent home for wearing a suit. Even after leadership told him it was okay to wear a suit, he was treated different after he incorporated suits and clothing associated with his male gender into his work attire.

22.     Plaintiff reported to Laura Williams, Manager of Product Delivery. Williams is a Caucasian female.

23.     During Plaintiff's employment, Williams and other management, such as Amanda Hill (Defendant's Director of Product Solutions) made disparaging comments to Plaintiff based on his male gender, such as telling Plaintiff he should be more aggressive because he was a man and that he should be able to handle any work-life balance issues because he was a man.

24.     As early as November 2022, Plaintiff reported his issues with racial, color, and sex discrimination to Brian Tevenan, Executive Director of Product Solutions. Tevenan's response was to ask Plaintiff if there was a way he could resolve the issue without Plaintiff going to Human Resources.

25.     In June 2023, Plaintiff, Williams, and other employees participated in a Microsoft Teams call on a project. When the development team on the call agreed with Plaintiff about the limitations of the digital dashboard they were discussing, Williams became irate and hostile. After the call, she came to Plaintiff's desk, screamed at him, banged on the desk, and threw a pen at Plaintiff's computer monitor, which nearly hit him. This was witnessed by several colleagues present in the office. Williams' aggressive behavior was alarming and humiliating to Plaintiff.

26.     In August 2023, Amanda Hill began joining Plaintiff's one-on-one meetings with Williams. Hill requested Plaintiff complete a competence test to ensure he could perform his role.

27. Plaintiff made a complaint to Defendant's Human Resources about Hill's competence test request in September 2023. Human Resources later told Plaintiff it was not appropriate for Hill to make this request.

28. In September 2023, Plaintiff participated in protected activity by filing a Human Resources claim to report Hill's and Williams' behavior to Defendant. Plaintiff requested to be transferred to a different team to remove himself from the worsening situation with Hill and Williams, but Defendant refused to transfer him.

29. After this report was filed, Williams retaliated against Plaintiff during another internal Teams call on an audit tool. Williams publicly humiliated Plaintiff by demoting him from his decision-making position on the audit tool. She harassed Plaintiff throughout the call by breathing heavily and audibly tapping on her cup whenever Plaintiff spoke. When Plaintiff asked her for clarification on changes she wanted made, Williams was hostile and disrespectful to Plaintiff.

30. In September 2023, Hill and Williams issued Plaintiff a coaching memo regarding, in part, his communication abilities. Hill and Williams represented to Plaintiff that his confusion was confusing and unclear, which resulted from their discriminatory attitudes toward Plaintiff based on his sex, race, and color.

31. On another Teams call that Plaintiff hosted in October 2023, Williams again breathed heavily and banged her cup on the table when Plaintiff spoke, and belittled Plaintiff in front of team members and representatives from an outside vendor. Another participant in the call asked Williams to take the conversation off-line as Williams' treatment of Plaintiff was making others on the call uncomfortable. This was supported by Plaintiff's teammates, who reached out to

Plaintiff after the meeting to express concern about Williams' actions. They noted they had never seen her act this way toward any other employee.

32. Notably, Plaintiff was the only Black male directly managed by Williams, and the only Black male in a leadership position on his team during most of his employment. The only other Black male was based in Chicago and held in a managerial role that meant he was not managed by Williams. This other individual eventually left the department.

33. After the meeting, Williams reported to Defendant that Plaintiff was rude to the outside vendor. Williams issued Plaintiff a coaching memo for his behavior during the meeting, when the issues in the meeting occurred because of Williams' barrage of harassment toward Plaintiff, which alarmed Plaintiff's colleague and the outside vendor.

34. After this call, Plaintiff emailed both Hill and Williams asking for help to resolve this issue, as Williams had continually lashed out against him in public during meetings, which was humiliating and distressing to Plaintiff.

35. In January 2024, Plaintiff submitted another claim to Human Resources to report his ongoing issues with Hill and Williams, including their retaliation against him after his previous September report.

36. On January 23, 2024, Hill and Williams placed Plaintiff on a 30-day performance improvement plan (PIP), which included grievances from Plaintiff's prior HR claims and outdated issues that Plaintiff had already resolved. Hill and Williams again criticized Plaintiff's communication issues as part of their continued campaign to make the only Black male in a leadership position on the team appear incoherent and incapable of communicating, which was untrue.

37. Shortly after Plaintiff was issued the PIP, Williams completed his end of the year review, which again contained outdated issues and biased comments that Williams included to push Plaintiff out. At the time, Plaintiff was in the process of interviewing with another department, which was halted after Williams scored Plaintiff 2 out of 5 on his 2023 End of Year Review. During the review, Hill also removed Plaintiff from his leading role in the project.

38. In February 2024, after removing Plaintiff from a leadership role, Williams and Hill reassigned these duties to a less-experienced and lower-ranking Latin-American female employee, Sara Mishler. Williams, Hill, and Mishler excluded Plaintiff from meetings, removed him from meetings he was already scheduled to attend, and instructed Plaintiff to cancel calls and meetings he had scheduled to discuss the project.

39. In February 2024, one of Plaintiff's coworkers submitted an anonymous complaint to HR expressing the same concerns about Williams' behavior and communication style.

40. In March 2024, during a Teams call with developers and business analysts, Plaintiff began presenting an audit tool mock-up and discussing display options. Williams became visibly frustrated, yelling across the room and clinging her cup against the table. Williams dismissed Plaintiff's tool as "dumb" and hung up on the call.

41. As a result of the continuing and ongoing harassment and retaliation, and Defendant's failure to take substantive action to address Plaintiff's complaints, Plaintiff began suffering panic attacks and elevated blood pressure. These health issues led Plaintiff to seek medical treatment and, ultimately, to request leave under the Family and Medical Leave Act of 1993.

42. Plaintiff was approved for leave, but required to complete an action plan for Mishler to use to complete the project while on leave. Plaintiff was also issued a revised 60-day PIP prior to the start of his FMLA.

43. Plaintiff returned to work on July 1, 2024, to find the project was incomplete, even though it had been reassigned to Mishler to complete during his leave.

44. On July 2, 2024, Plaintiff was terminated, ostensibly for performance issues.

45. Defendant's reasons for terminating Plaitniff were pretextual. Plaintiff was actually terminated as a result of discrimination based on his race, color, and sex, and in retaliation for his protected activity, which included complaints to Defendant about this treatment.

### V.   FIRST CLAIM FOR RELIEF – Title VII Claims

46. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

47. Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted his administrative remedies.

48. Defendant engaged in unlawful employment practices in violation of 42 U.S. Code §2000e-2.

49. Specifically, and as detailed above, Plaintiff, a multiracial Black male, received adverse employment actions and was terminated as a result of discrimination based on his race, sex, and color, and retaliation based on his complaints about this treatment.

50. Defendant employs White and female individuals who were not subject to the same treatment that Plaintiff experienced during his employment.

51. Specifically, these employees were not sent home from work when they wore business-appropriate clothes for their gender; they were not harassed, publicly threatened and

humiliated by management; they were not told to toughen up or that they should be able to handle work-life balance because they were men; and they were not issued coaching memos, placed on PIPs, or terminated for pretextual reasons.

52. As a result, Plaintiff was treated disparately from Defendant's White and female employees.

53. At all relevant times, Plaintiff could perform the essential function of his position.

54. However, Plaintiff was terminated within the relevant statutory period.

55. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, sex, and color, and in retaliation for his protected activity.

56. The unlawful employment practices complained of above were and are intentional.

57. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

58. Pursuant to Title VII of the 1964 Civil Rights Act, as amended, Plaintiff is entitled to, and he seeks, an additional amount as compensatory and punitive damages equal to the sum of his lost wages or salary, benefits and/or other compensation denied or lost to him by reason of Defendant's violations of Title VII, plus any interest he is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of Title VII.

## VI. SECOND CLAIM FOR RELIEF – ACRA Claims

59. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

60. Plaintiff has timely filed a charge with the EEOC, received a right to sue letter, and has thus exhausted his administrative remedies.

61. Defendant engaged in unlawful employment practices in violation of Ark. Code Ann. §§ 16-123-101, *et seq.*

62. Specifically, and as detailed above, Plaintiff, a multiracial Black male, received adverse employment actions and was terminated as a result of discrimination based on his race, sex, and color, and retaliation based on his complaints about this treatment.

63. Defendant employs White and female individuals who were not subject to the same treatment that Plaintiff experienced during his employment.

64. Specifically, these employees were not sent home from work when they wore business-appropriate clothes for their gender; they were not harassed, publicly threatened and humiliated by management; they were not told to toughen up or that they should be able to handle work-life balance because they were men; and they were not issued coaching memos, placed on PIPs, or terminated for pretextual reasons.

65. As a result, Plaintiff was treated disparately from Defendant's White and female employees.

66. At all relevant times, Plaintiff could perform the essential function of his position.

67. However, Plaintiff was terminated within the relevant statutory period.

68. The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, sex, and color, and in retaliation for his protected activity.

69. The unlawful employment practices complained of above were and are intentional.

70. The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

71. Pursuant to Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and he seeks, an additional amount as compensatory and punitive damages equal to the sum of his lost wages or salary, benefits and/or other compensation denied or lost to him by reason of Defendant's violations of ACRA, plus any interest he is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of ACRA.

## VII.   PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Boyce Mitchell respectfully prays that Defendant be summoned to appear and to answer herein as follows:

(A) A declaratory judgment that Defendant's practices violate Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000(e)-2 and the related regulations;

(B) A declaratory judgment that Defendant's practices violate the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.* and the related regulations;

(C) Judgment for damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. Code §2000(e)-2, *et seq.* for all compensation, compensatory, and punitive damages owed to Plaintiff;

(D) Judgment for damages pursuant to Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for all compensation owed Plaintiff for back pay and associated interest and fees;

(E)     An order directing Defendant to pay compensatory and punitive damages to Plaintiff along with pre-judgment interest, reasonable attorney's fees, and all costs connected to this action;

(F)     Such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

**BOYCE MITCHELL, PLAINTIFF**

PUNCHWORK LAW, PLC
North Little Rock Office
501.242.4299

By:     Elizabeth Rogers (ABN: 2023219)
Elizabeth.rogers@punchworklaw.com
Chris Burks (ABN: 2010207)
chris@punchworklaw.com

Mailing Address:
1 Riverfront Place, Suite 745
North Little Rock, AR 72114